```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

|  |  |
|---|---|
| Joel Murray, | )<br>)<br>) 00 Civ. 5544 (RCC)<br>)<br>) MEMORANDUM<br>) & ORDER ADOPTING<br>) REPORT &<br>) RECOMMENDATION<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, |
| - against - |
| New York City, Warden Howard Robertson (H.D.M.),<br>Johnson # 260, Bonalla # 854 and Department of<br>Corrections, In Their Personal & Official Capacity, |
| Defendants. |

**RICHARD CONWAY CASEY, United States District Judge:**

     Plaintiff Joel Murray ("Plaintiff"), appearing pro se, filed this § 1983 action against Howard Robertson, warden of the James A. Thomas Center facility on Rikers Island in which Plaintiff was housed, Correctional Captains Terrance Johnson and Alphonso Bonilla, the City of New York, and the Department of Corrections (collectively "Defendants"). Plaintiff alleges several constitutional violations arising out of Defendants' treatment of him while he was a prisoner on Rikers Island. At the conclusion of discovery,[1] the parties filed motions, which Magistrate Judge Dolinger treated as cross-motions for summary judgment. In a Report and Recommendation ("Report") dated April 21, 2005, Magistrate Judge Dolinger recommended that Defendants' motion for summary judgment be granted and that Plaintiff's motion be denied. After considering Plaintiff's objections, this Court adopts Judge Dolinger's Report in its entirety.

**I. Background**

     In January 1999, Plaintiff was taken into custody and processed at Rikers Island. At that time, corrections officers discovered a razor concealed in his coat and, as a result, classified him as a "red-card inmate." Pltff's Dep. Tr. at 125, 127. Red-card inmates are handcuffed with their hands behind their backs and are required to wear gloves when they are transported outside the prison. The January 1999 charges were eventually dismissed, but when Plaintiff was rearrested in April of that year, his red-card classification remained in place. Id. at 81-83, 127.

     Before the incidents giving rise to this complaint, Plaintiff states that he sustained several

---

     [1] Throughout his objections, Plaintiff complains that he was not provided sufficient discovery. As the Magistrate correctly noted, Plaintiff was given ample opportunities to request and collect relevant evidence. There is nothing from which this Court can infer that Defendants have withheld the production of relevant evidence. That Plaintiff was unable to identify and, therefore, collect evidence that he believes might exist is not a basis for declining to adopt the Magistrate's Report.

head injuries in the 1970s, which resulted in periodic blackouts. Id. at 113-15. Plaintiff also claims that he has experienced seizures since he was a child, but they became more intense in 1994. Id. at 172-73. While in custody, on August 18, 1999 Plaintiff sustained back and head injuries in a collision between two Corrections Department buses. Id. at 116-119. Additionally, on September 7, 1999, while in court, his "whole back and leg gave out,"and Plaintiff has since been authorized to walk with the assistance of a cane. Id. at 118-23.

Plaintiff states that although his red-card status required shackling from behind, some Rikers correction officers allowed him to be shackled in front. Id. at 127-28. Once, due to administrative error, he was not shackled at all while being transported to court. Id. at 128-29. Plaintiff also claims that after the September 7 incident, some guards shackled him in front so that he could use his cane. Id. at 129.

On November 15, 1999, Plaintiff refused to enter the prison bus scheduled to take him to court for his trial because the corrections officer insisted on shackling him from behind. Id. at 130-31. Plaintiff then went to the prison clinic, accompanied by one or more guards, to seek a new permit card for his cane. The nurse on duty advised him and the officers that the clinic records showed that Plaintiff was authorized to have a cane, but that the clinic doctors had not approved him to be handcuffed in the front. The nurse also told the Plaintiff to return to the clinic after the day in court to be evaluated. Id. at 135-37. Plaintiff then allowed himself to be shackled from behind and took his cane and went to the bus. Id. at 137.

When the bus arrived at 111 Centre Street,[2] Plaintiff was told to exit. Plaintiff apparently used his cane to guide himself backwards down the steps and in doing so he "miscounted" the number of steps. As a result he fell and struck his head. Id. at 140-43. Plaintiff was taken to court in a wheelchair. At the conclusion of the trial day, the presiding judge ordered Plaintiff to seek medical attention. Id. at 148-50.

Plaintiff was then taken to the holding area for red-card inmates. Plaintiff claims that Defendant Johnson entered the bullpen, stood on a bench, and asked "how are we going to do this in an intimidating way?" Plaintiff insists he ignored Defendant Johnson. Id. at 152-54. Nurse Bonds entered the holding area, took Plaintiff out into the hallway, examined him, and gave him Motrin (and "stuff like that"), but did not take him for x-rays. Id. at 152-54. Because he was not given x-rays, Plaintiff refused to countersign the medical report. Id. at 157. Nurse Bonds reported Plaintiff was cleared for transportation and instructed Defendants Johnson and Bonilla to lift him by the elbows when removing him from the wheelchair. Plaintiff claims that Defendants Johnson and Bonilla lifted Plaintiff out of the wheelchair, and threw him onto a bench seat in the van. Id. at 157. Plaintiff suffered no injuries as a result of this toss "because at that point they really didn't force – they picked me up and threw me on. They really didn't use

---

[2] The parties are unclear about whether Plaintiff's trial was held at 100 or 111 Center Street. This dispute and the Magistrate's attempt at resolving it are immaterial to the resolution of the motions before the Court. See Report at 11, n.6.

2

no force." Id. at 160.

Plaintiff testified that while he was on the van he blacked out or fell asleep and awoke to find himself on the prison bus with intense back and head pain. Id. at 161-63. Once back at Rikers, Plaintiff was carried off the bus on a stretcher and examined by a doctor who gave him ice packs, Motrin, and a cane. Id. at 166-67. According to prison medical records, the examining doctor observed a hematoma on the back of Plaintiff's head, but Plaintiff was able to walk back to his cell on his own. Pltff's Memo at Ex. D.

Over the next few days, Plaintiff refused to have x-rays taken of his back because he wanted the prison to x-ray his head as well. Pltff's Dep. Tr. at 168-69. Before meeting again with the prison doctor, Plaintiff encountered Defendant Robertson in the hall and complained to him about his intense head pains. The warden responded that he could only "contact the medical department and ask them to reevaluate [Murray's] medical condition." Id. at 169. Plaintiff attributes the subsequent summons for back and head x-rays to the warden's intervention. Id. at 170. The prison doctor allegedly told Plaintiff that the x-rays did not reveal anything and prescribed physical therapy. Id. at 170-71. Plaintiff received therapy and a back brace and was given a course of Depakote by a neurologist to control "seizures and stuff like that." Id. at 171; Pltff's Memo at Ex. H.

After a thorough review of the complaint, Plaintiff's deposition, and other exhibits, Magistrate Judge Dolinger found that he could not sustain a cause of action under § 1983. Plaintiff has not established that the red-card classification and its requirements violated his equal protection rights. Nor has he demonstrated that any alleged denial of medical care reached the level of deliberate indifference to his serious medical needs or that he was subjected to excessive force in violation of due process protections. Although Plaintiff objects to the entire Report, his objections do not raise issues that have not already been thoroughly and properly resolved by Magistrate Judge Dolinger.

## II. Discussion

The Court reviews de novo the portions of the Report to which the Plaintiff objects. See Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(c).

### A. General Objections

Plaintiff objects that in delaying a decision on the cross-motions, Magistrate Judge Dolinger has prejudiced Plaintiff because it will be more difficult to locate eye-witnesses and documents in support of his case. As was noted above, Plaintiff had several opportunities to identify and locate eye-witnesses and documents throughout the discovery process. Discovery was complete at the time the parties filed their motions for summary judgment. Therefore, Plaintiff could not possibly be prejudiced by the time Magistrate Judge Dolinger spent reviewing his claims.

Plaintiff objects to the Report in its entirety because it suggests that Plaintiff was absent-

3

minded concerning his whereabouts during his trial. Again, as the Court has pointed out, the dispute about the location of Plaintiff's criminal trial and Magistrate Judge Dolinger's judicious attempt at resolving it are not relevant to the success of Plaintiff's claims. Moreover, Magistrate Judge Dolinger explicitly viewed the record in a light most favorable to Plaintiff and considered possible actions by Defendants that Plaintiff proposed, even when there was no evidentiary support for them. See generally Report at 6-18; see also id. at 12 (considering possibility, as Plaintiff suggested, that Defendants had thrown him from the van).

### B. Constitutional Claims

Plaintiff insists that the red-card policy violates his rights under the Equal Protection Clause. Although the Equal Protection Clause requires that "'the government treat all similarly situated people alike,'" Cobb v. Pozzi, 352 F.3d 79, 99 (2d Cir. 2003) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001), the Supreme Court has upheld a "unitary, deferential standard for reviewing prisoners' constitutional claims . . . ." Shaw v. Murphy, 532 U.S. 223, 229 (2001). Therefore, "so long as there is a plausible policy reason for the classification . . . and the relationship of the classification to its goal is not so attenuated as to render the distraction arbitrary or irrational," the Equal Protection Clause is satisfied. Nordlinger v. Hahn, 505 U.S. 1, 11 (1992). Although the red-card policy requires behind-the-back shackling that presented a physical challenge to Plaintiff who required the use of a cane, the policy was designed to ensure the safety of prison staff, other inmates, and the public from potentially dangerous inmates. Because Plaintiff was in possession of a weapon at the time of his processing at Rikers Island, the enforcement of the red-card policy was clearly legitimate and thus did not violate Plaintiff's rights under the Equal Protection Clause.

Plaintiff also claims he was denied appropriate medical care. To establish denial of appropriate medical care, an inmate must demonstrate "deliberate indifference to his serious medical needs." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Serious medical conditions exist where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotations and citations omitted). Plaintiff described his injuries as serious head pain and back strain as a result of his fall from the prison bus on November 15, 1999, which were aggravated during the bus ride back to the prison later that evening. Plaintiff conceded, however, that he received medical treatment at the courthouse after his fall from the bus, that he received further medical attention upon his return to the prison that evening, and that he received follow-up care in the succeeding days. Further, there is no evidence to indicate that any authoritative figure acted with deliberate indifference to his condition. Therefore, Plaintiff's claim that he was denied appropriate medical care is baseless.

Plaintiff also claims he was subjected to excessive force when defendants "threw" him into the prison van prior to his transportation to Rikers Island on November 15 and when Captain Johnson's acted in an "intimidating" manner towards Plaintiff in the red-card bullpen. To establish an excessive force claim under the Due Process Clause, the Plaintiff must demonstrate

4

that the conduct of the prison staff amounted to "wanton and unnecessary infliction of pain." Gregg v. Goergia, 428 U.S. 153, 173 (1976) (citations omitted). The court must ascertain whether the correctional officer acted "'in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Sims v. Artuz, 230 F. 3d 14, 21 (2d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although Plaintiff alleged that the officers "threw" him into the bus, he later admitted they used no force and that he had suffered no injury. Additionally, although Plaintiff complained that Captain Johnson used intimidating tactics, Plaintiff again conceded that the captain used only words and gestures (including standing on a bench), and never touched him. By admitting no excess force was used in either scenario, the Plaintiff effectively invalidated his own excessive force claim.

As to the City's liability, Plaintiff must show that a policy or practice of the City caused the alleged deprivation of his rights. Moreover, a plaintiff "must prove that the defendants' actions against him were caused by a specific identifiable policy . . . or that the challenged conduct resulted directly from a decision 'properly made by the government's authorized decision-makers.'" Flynn v. New York City Bd. of Educ., 2002 WL 31175229, at *8 (S.D.N.Y. Sept. 20, 2002) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978) and Penbaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Because Plaintiff has alleged no such policy, Plaintiff's claim against the city should be dismissed.

### C. Sanctions
Finally, Plaintiff moved for sanctions regarding spoilage of evidence. This Court adopts the Magistrate's recommended denial of Plaintiff's motion because there has been no demonstration that Defendants engaged in discovery misconduct.

### III. Conclusion
For the reasons explained above, the Court adopts the Magistrate's thorough and reasoned Report and Recommendation. Defendants' motion for summary judgment is granted. Plaintiff's motion is denied. The Court agrees that Plaintiff's request for sanctions should be denied. The Clerk of the Court is asked to close the case.

**So Ordered:** New York, New York
August 3, 2005

*Richard Conway Casey*
Richard Conway Casey, U.S.D.J.